Mark SUSSMAN; Ken Gerrin; Perry Carter; Simone Lund; Vanese McNeil; Amin A. Faruqi; Betty Koss; Robert Bozoyan; Lilian Hedrick; Evangeline Ragasa; Christopher Rogers; Patricia Hopkins; Derrick C. Leshurre; Deanna Williams, Plaintiffs–Appellants,

v.

AMERICAN BROADCASTING COMPANIES, INC., dba KABC–TV Inc.; Thomas Albert Oetgen; Bob Calo; Richard Kaplan; Walter Porges; Ira Rosen; Stacy Lescht; American Broadcasting Companies, Inc.; Clayton McVicker, Defendants–Appellees.

No. 97–55410.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1998.

Decided Aug. 18, 1999.

Neville L. Johnson, Neville L. Johnson & Associates, Los Angeles, California, for the plaintiffs-appellants.

Steven M. Perry, Munger, Tolles & Olsen, Los Angeles, California, for the defendants-appellees.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and PANNER,* District Judge.

KOZINSKI, Circuit Judge:

We decide whether ABC's surreptitious videotapings during an investigation of the Psychic Marketing Group could have violated 18 U.S.C. § 2511 (1994), the federal wiretapping statute.

I

ABC hired Stacy Lescht to pose as a psychic telephone advisor in order to gain access to the offices of the Psychic Marketing Group (PMG). While working in the Los Angeles office of the PMG, Lescht used various surveillance devices to record the activities around her. Some of these recordings were aired in a segment of the ABC News program Prime Time Live.

Soon thereafter, two PMG employees who had been taped filed suit in state court alleging various causes of action, including invasion of privacy by photography.[1] The jury found for plaintiffs on this claim but the California Court of Appeal reversed. *See Sanders v. American Broad. Cos.*, 60 Cal.Rptr.2d 595, 599 (Cal. Ct.App.1997).[2] The California Supreme Court, in turn, reversed the Court of Appeal, holding that the covert taping of office conversations by a television reporter could be actionable as an invasion of privacy. *See Sanders v. American Broad. Cos.*, 20 Cal.4th 907, 85 Cal.Rptr.2d 909, 978 P.2d 67 (1999).

Prior to the Supreme Court's ruling, more than a dozen current and former PMG employees, plaintiffs here, filed a lawsuit based on the same conduct as in Sanders; plaintiffs asserted, inter alia, claims for eavesdropping under 18 U.S.C. § 2511.[3] Defendants subsequently removed the case to federal court. The district court granted defendants' motion for summary judgment and plaintiffs appeal.

II

Section 2511 reads in pertinent part:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the commu-

---

* The Honorable Owen M. Panner, Senior United States District Judge for the District of Oregon, sitting by designation.

1. It is unclear whether plaintiffs had pleaded this in their complaint, as the state trial judge sua sponte instructed the jury on the elements of the " 'sub-tort' of 'the right to be free of photographic invasion.' " *Sanders,* 60 Cal. Rptr.2d at 596.

2. The reversal was only as to one of the plaintiffs; the other one, Naras Kersis, died during the pendency of the proceedings, and so his suit was dismissed.

3. Plaintiffs also raised various state law claims but none of those are at issue in this appeal.

nication has given prior consent to such an interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.* 18 U.S.C. § 2511(2)(d) (emphasis added). Because ABC was not acting under color of law, and because Lescht was always a party to the conversations being taped,[4] the case turns on the italicized portion of the statute, which asks whether the interception was "for the purpose of committing any criminal or tortious act." The district court ruled that it was not, because ABC had done the taping for news gathering purposes: "[W]here a journalist is party to a conversation, the recording of such a conversation for news gathering purposes is not criminal or tortious conduct within the meaning of the statute." If the district court interpreted section 2511 as containing a blanket exemption for journalists, we cannot agree. Congress could have drafted the statute so as to exempt all journalists from its coverage, but did not. Instead, it treated journalists just like any other party who tapes conversations surreptitiously.

■ The district court may have meant, however, that defendants were exempt because they had *a* lawful purpose for the surreptitious taping, namely news gathering. The court may have reasoned that any time the interception serves a lawful purpose, it perforce does not violate section 2511. But the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose. For example, assume that a news gathering organization secretly videotapes bedroom activities. Even though there may be a legitimate news gathering purpose (e.g., listening for "pillow talk" about some newsworthy event), public airing of such a tape may be illegal or tortious under state law. Under these circumstances, the taping could be for both a legitimate purpose (news gathering) and

also an unlawful or tortious purpose (airing private intimate conduct). The existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose; the taping would violate section 2511.

■ Plaintiffs here have pointed to no state statute or caselaw indicating that it was tortious or illegal for ABC to air the tapings made by Lescht. In fact, the California Court of Appeal recently emphasized that "[n]ewsworthiness ... is a complete bar to liability for publication of private facts and is evaluated with a high degree of deference to editorial judgment." *Marich v. QRZ Media, Inc.,* 73 Cal.App.4th 299, 86 Cal.Rptr.2d 406, 419 (1999). While plaintiffs have claimed that ABC's story was factually incorrect and unfair, they have never claimed it was not newsworthy. Nor do they argue that the tape was made for the purpose of committing some other subsequent crime or tort. Rather, plaintiffs point to *Sanders* and argue that the taping *itself* was tortious. If an otherwise lawful taping violates section 2511 when committed for a prohibited purpose, argue plaintiffs, the section must also be violated when the taping itself is illegal or tortious. This argument finds no support in the statute. Under section 2511, "the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Payne v. Norwest Corp.,* 911 F.Supp. 1299, 1304 (D.Mont.1995), *aff'd in part and rev'd in part,* 113 F.3d 1079 (9th Cir.1997). See also *Deteresa v. American Broad. Cos.,* 121 F.3d 460, 467 n. 4 (9th Cir.1997) (emphasizing the distinction between a taping that is itself tortious or criminal, and one carried out for the purpose of committing some other crime or tort). Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies. Where the purpose

4. Plaintiffs argue that Lescht taped some conversations to which she was not a party, but they have presented no evidence supporting this claim.

is not illegal or tortious, but the means are, the victims must seek redress elsewhere.

Although ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape. We may affirm the district court on any basis supported by the record. *See, e.g., United States v. Albers,* 136 F.3d 670, 672 (9th Cir.1998).

AFFIRMED.